STATE, use of WOOLSEY BURTON, Adm'r. of MIERS BURTON, deceased *vs.* GEORGE TUNNELL and ELIZABETH BURTON, Adm'rs., (who were joint or co-administrators with said Woolsey) and their sureties, viz : Isaac Tunnell, William Denning and Charles Tunnell.

STATE, use W. BURTON *vs.* GEORGE TUNNELL and sureties.

On the removal or death of an administrator, the co-administrator or succeeding administrator is entitled to receive not only the goods unconverted, but all the assets in hand, and may sue for the same on the bond.

Where co-administrators execute separate bonds, and one of them dies or is removed, the co-administrator may sue on the bond, and recover the balance appearing on his account.

QUESTIONS of law reserved by the Superior Court, for hearing before all the judges.

Present, Johns, Chancellor, Chief Justice Booth and Judges Harrington and Milligan. [Judge Wootten did not sit, having been of counsel.]

The suits were several against these defendants and consolidated, by agreement, and order of court.

The declaration set out the administration bond, executed by George Tunnell and Elizabeth Burton, with the other defendants, their sureties, on the 4th of December, 1838, conditioned in the usual form ; averred the death of Miers Burton, [November 8, 1838,]

intestate; the grant of letters of administration to Woolsey Burton, to Elizabeth Burton and George Tunnell; that Woolsey Burton executed a *separate* administration bond; and Elizabeth Burton and George Tunnell executed a joint and several administration bond, (as above) with the other defendants, their sureties; that Elizabeth Burton *died* before closing the concerns of said estate [February 1, 1841,] leaving George Tunnell and Woolsey Burton her surviving; that after her death, viz: October 7th, 1842, George Tunnell was *removed* from office by the register, leaving Woolsey Burton sole surviving administrator of Miers Burton; that at sundry times between the grant of administration and the removal of George Tunnell, goods, &c., came to George Tunnell's hands, to be administered to the amount of $100,000; and that at the time of his removal, there remained in his hands an unadministered residue of $20,000; with which he, as such administrator was chargeable; and assigned the following breaches:—1. That he did not *surrender* and *deliver* this *unadministered residue* to Woolsey Burton, the remaining administrator. 2. Averring $40,000; in his hands when removed, of goods, &c., with which he was *chargeable*; that he did not *deliver* and *surrender* the same, nor any part thereof to said Woolsey Burton; by means whereof, &c.

Pleas:—1. Non est factum; 1. payment; 3. payment by Isaac Tunnell; 4. non damnificatus; 5. that all the goods, &c., which came to George Tunnell's hands as administrator as aforesaid, came into the hands and possession of the said George Tunnell, by the agreement and assent, and with the permission and co-operation of the said Woolsey Burton, then being one of the administrators of the said Miers Burton, deceased; 6. that there were no goods, &c., remaining in George Tunnell's hands at the time of his removal, which he was bound to surrender or deliver over to said Woolsey Burton, sole remaining administrator; 7. pleue administravit; 8. that there were no unadministered goods, &c., in George Tunnell's hands at the time of his removal; 9. that there were no unadministered goods, &c., in his hands at the time of his removal, which he was bound to surrender and deliver over, &c.

Replications and issues to all the pleas, except the fourth and fifth, and demurrers to them.

George Tunnell's last administration account showed a balance against him of $9,732 82.

Verdict taken, subject to the opinion of the Court of Errors and Appeals, on the questions reserved in these causes.

The questions reserved were as follows:—

*First.*—Whether a co-executor or administrator, a succeeding executor or administrator, after the death or removal of his co-executor or administrator, or preceding executor or administrator, is entitled to sue and recover from him or his sureties, in an action on the administration or testamentary bond, the residue remaining of the goods and chattels, rights and credits of the estate or intestate, after all just demands and charges to which the said goods and chattels, rights and credits, in the due course of the administration thereof are subject, are deducted.

*Second.*—Whether the evidence in this cause shows and proves merely a residue, such as aforesaid, remaining in the hands of George Tunnell, administrator of Miers Burton, deceased, at the time of his removal.

*Third.*—Whether the co-administrator or remaining administrator, in an action on the administration bond, can recover against a co-administrator, a preceding administrator, or his sureties, in case of the death or removal of such co-administrator, or preceding administrator, any goods and chattels, rights and credits, remaining in the hands of such co-administrator or preceding administrator, at the time of his death or removal, other than unadministered goods and chattels, rights and credits.

*Fourth.*—Whether the evidence in the cause shows and proves any unadministered goods and chattels, rights and credits of the said Miers Burton, remaining in the hands of the said George Tunnell, as administrator, at the time of his removal.

*Fifth.*—Whether an administrator, giving a separate bond, can sustain an action against the sureties of his co-administrator, on the bond executed by such co-administrator and sureties, in case of the death or removal of such co-administrator, for any goods or chattels, rights or credits, which have been in his own possession or control, solely, or in the joint possession and control of himself and his co-administrator, though afterwards charged to the said co-administrator singly, in his separate account.

*Sixth.*—Whether the evidence in this case shows and proves that the goods and chattels, rights and credits, proved to be remaining in the hands of George Tunnell, as administrator of Miers Burton, deceased, at the time of his removal, were previously, at any time

after the death of the said Miers Burton, in the possession or control of the the said Woolsey Burton, administrator jointly with the said George Tunnell, or jointly with the said George Tunnell and Elizabeth Burton, deceased.

*Seventh.*—Whether the defendants, or either of them severally, on the demurrers of the plaintiff to their respective pleas on the law arising on the whole proceedings, in each case, are entitled to judgment in their, or his, favor respectively.

These questions were argued by by Messrs. *Layton* and *Bates*, for the plaintiff; and Messrs. *Cullen, Bayard* and *Houston*, for the defendants.

Plaintiffs' propositions:—

1. A surviving or remaining administrator, after the death or removal of his co-administrator, is entitled to sue for and recover, from the estate or sureties of such deceased or removed administrator, in an action on the administration bond, the residue remaining of the goods, chattels, rights, credits, monies, securities, books and papers of the intestate, after all just demands and charges, to which the same, in the course of the administration thereof are subject, are deducted. (*Digest* 216 to 231; 1 *Cromp. & Meeson* 690.)

2. The evidence in this cause does not show that all the just demands and charges, to which the goods, chattels, rights and credits, which were of the said Miers Burton, deceased, at the time of his death, which came to the hands, possession or knowledge of the said George Tunnell, to be administered, are subject, have been paid or deducted; nor does it show or prove merely such residue as aforesaid, remaining in the hands of the said George Tunnell, administrator as aforesaid, at the time of his removal from his said office; nor that all the debts due and owing from the said Miers Burton, deceased, at the time of his death, have been paid.

3. A surviving or remaining administrator, after the death or removal from office of his co-administrator, is entitled to recover against such co-administrator or his sureties, in an action on the bond, all the goods, chattels, rights and credits, monies, securities, books and papers belonging to the estate of the intestate, or with which such deceased or removed administrator was, at the time of his death or removal, chargeable, all just allowances being made.

4. The evidence in this case shows and proves unadministered goods, chattels, rights and credits, monies, securities, books and papers, belonging to the estate of said Miers Burton, deceased, re-

maining in the hands of the said George Tunnell, administrator as aforesaid, or with which he was chargeable, at the time of his removal.

5. The distribution and payment of the residue of personal estate, to the person entitled, is a part of the administration; and no administration is complete or closed, until such distribution and payment are made. (1 *Williams Ex.*, 363-4; 1 *Crompton & Meeson*, 690; 1 *Haggard E. R.*, 64; 3 *Tyrwhit*, 390; *Cowp.*, 140; *Ambler*, 183; *Vezey, sen.*, 368; 1 *Salk.* 251, 316.)

6. When an administrator misapplies and converts to his own use, the effects of his intestate, so that these effects are lost to the estate of the intestate, this is a breach of that part of the condition of his bond, by which he undertakes to "*well and faithfully administer, according to law*," &c., and the rule applies to the misapplication of a mere residue, remaining after the payment of all just debts and charges. (1 *Williams Ex.*, 364; 1 *Crompton & Meeson*, 690; 1 *Haggard E. R.*, 64; 3 *Tyrwhit*, 390.)

7. Each of two or more co-administrators, giving separate bonds, is separately liable, on his bond, for all such goods and chattels, rights and credits of his decedent as come to his hands; and if such co-administrator is removed from office, or departs this life, before closing the concerns of his administration, the remaining or surviving administrator may maintain an action against the sureties of such removed or deceased administrator, on the bond, for any goods, chattels, rights and credits, monies, securities, books and papers, with which such removed or deceased administrator has charged himself, in any account passed by him, or with which he was at the time of such removal or decease chargeable; nor can it alter the case, though such goods, chattels, &c., had at some former period, been in his own possession, either solely, or jointly with such co-administrator.

8. The evidence in this cause, does not show, that the goods, chattels, rights and credits, proved to be remaining in the hands or possession of the said George Tunnell, administrator as aforesaid, at the time of his removal, were at any former period in the hands of the said Woolsey Burton, administrator as aforesaid, either separately or jointly, with the said G. Tunnell, administrator as aforesaid.

9. That the administrator, pursuant to the condition of his bond, to "*well and faithfully administer according to law*," &c., must show that the assets received by him have been applied in due course

of administration, &c., to the payment of the debts of the deceased. (7 *Cow. Rep.* 34; *Campbell* vs. *Tonsey.*)

10. That the plaintiff is entitled to judgment on the several demurrers.

1. The first plea demurred to amounts to and is in fact *non damnificatus*, which, under the facts is a bad plea. (1 *Bos. & Pull.* 638, 40 *and note a. and b.*; 1 *Saund. Rep.* 116, *note ;* 1 *Kentucky Dig.* 498; 20 *Johnson*, 153; 3 *Cowen*, 313; 5 *Johnson*, 42; 14 *Johnson*, 177.)

2. The remaining administrator is the person to whom performance is required in case of the death or removal of his co-administrator, and consequently, is the person suffering the (legal) damage from the non-performance, and entitled to sue under the act in *Dig.* page 76. (See also 1 *Williams on Ex.*; 1 *Cromptan & Meeson*, 690; 1 *Haggard*, 64; 1 *Howard's Miss. Rep.* 87.)

3. The second plea demurred to is bad, because it attempts to put in issue matter not material in the cause, and which, if proved, is no answer to the breaches assigned, or issuable under them. (*Digest*, 216, 231.)

The defendants' propositions:—

1. The residue of an estate, after an account stated, is not unadministered goods," within the terms and condition of the bond.

2. The evidence shows nothing else than such a residue.

3. The fact that the goods came to George Tunnell's hands by the permission and agreement of Woolsey Burton, is a bar to his suit against the sureties of G. Tunnell.

4. Elizabeth Burton is not a surety of George Tunnell, and a suit cannot be maintained against her by Woolsey Burton, for George Tunnell's delinquencies. This question comes up under the demurrer, which runs back.

1. At common law, unadministered goods were goods remaining in specie, distinguishable from the administrator's own goods.— There was no such thing in a court of common law, as administering goods, further than collecting and converting the assets. The administrator was not bound to distribute or pay the residue; nor to pay legacies; nor could creditors maintain suits on the bond for any thing, except for the non-filing an inventory; legatees and creditors had to go into equity for payment of their claims, and such a court compelled also the payment of residue to residuary legatees. (1 *Williams on Ex.*, 656, *n. v.*; 15 *C. & L.*, 174-7-8, is directly at issue

with the case cited from 1 *Crompt. & Mess.*, 690.)    No action would
lie by a remaining administrator, after removal, which would not lie
by an administrator remaining, after the death of a co-administra-
tor, or by an administrator, d. b. n.

At common law, an administrator, d. b. n., could maintain no ac-
tion against the previous administrator's estate, on the ground of a
devastavit, but could sue only for unadministered goods; that is,
goods, remaining in specie, and distinguishable; or uncollected rights
and credits.

The question whether goods are administered, and whether they
are duly administered, are entirely distinct questions.

Nothing can be said to be unadministered goods, either on com-
mon law principles, or under the act of assembly and bond prescribed
by it, which has been charged to the administrator, and for which
he is personally liable to the distributees.

The terms " surrender and deliver" cannot apply to a balance due
from the administrator, but must refer to specific good; such goods
as have not been accounted for, and the administrator charged with;
all others with which he is yet " chargeable," he is bound to sur-
render and deliver to the succeeding or remaining administrator.

The act of assembly makes payment of legacies as well as of
debts part of the administration, which they were not at common
law, but the act does not make payment of residue a part of the ad-
ministration.    Hence the law adds a distinct duty, requiring pay-
ment of residue; on which clause, and not for non administering, a
breach must be filed to recover a balance.

Administration is the collection of debts, and filing an account so
as to charge the administrator.    The final account comes at the
closing the estate, but the goods are administered as fast as the ad-
ministrator charges himself with them, in any account.    The goods
are thus converted; belong to the administrator; and he and his
sureties are liable for the amount of the account, and not for the
goods.    This court has incidentally so decided.    A balance due to
a distributee may be attached; though a debt cannot be attached in
the hands of an administrator, because it is not yet administered.

The party cannot be liable to two actions by several parties.    If
the distributee has a right of action, the administrator d. b. n., or
succeeding or remaining administrator has not.    Suppose one of the
heirs of Miers Burton had sued George Tunnell for the balance ap-
pearing on this account, and he had pleaded the pendency of a suit

by W. Burton, the co-administrator, would that be a bar to the suit? On the contrary, it would be only a refusal to pay a debt to the party entitled to it, because another person claimed to recover it, that *he might pay it* to the same party. If there could be any defence arising from the fact that the estate was not closed, it would be the existence of outstanding debts, for payment of which the balance was required; *this must be pleaded and proved.*

2. The evidence does not show any unadministered goods in G. Tunnell's hands, when he was removed.

This is a result of the first question.

3. Can a remaining administrator maintain an action to recover from a removed co-administrator, goods which come to his hands by the consent of the plaintiff, or from his actual possession?

At law or in equity, an administrator is chargeable for a devastavit, in every case where by his assent or default goods go into the hands of his co-administrator and are wasted. It is the default and devastavit of both.

It follows that he cannot recover from the sureties of the co-administrator, on the liability thus arising. It would be strange to allow W. Burton to recover from these sureties, for a breach of his own duty, which was to receive and administer these goods, as much as it was George Tunnell's duty; and if he receives goods and puts them in Tunnell's hands, by his own act or agreement, Tunnel becomes *his agent;* they are both liable for the devastation, and W. Burton cannot charge G. Tunnell's sureties, whatever might be his rights in equity, as against George Tunnell.

No man can recover in an action founded on his own breach of duty; either at law or in equity. (*Hardress*, 314, *Gill* vs. *Attorney General; Prec. in Chan.*, 173; 2 *Brown's Ch. Ca.*, 95, [115;] 11 *Vesey*, 335; 1 *Merivale*, 712; 2 *Sch. & Lef.*, 242-4; 4 *Simon's Ch. Rep.*, 28.)

If, therefore, the assets of the estate went into George Tunnell's hands, by the agreement and consent of W. Burton, he is equally liable for a devastation, and cannot recover. He was not bound to meddle, but assenting to the entire control being taken by Tunnel, was a violation of his own duty. The plea here (which is admitted by the defendant) avers that the goods went into Tunnell's hands, by the consent and agreement of Woolsey Burton; which agreement is by the case in 4 *Simons*, sufficient to implicate both administrators.

Administrators may give separate bonds, but the rights and liabi-

lities of each other do not depend on the fact, but on their own conduct.    Mrs. Burton joined in the bond with George Tunnell.    Suppose she had lived and sued George Tunnell's sureties, for waste of these goods, and it had been shown that they went into Tunnell's hands by her act and assent, could she have recovered?    And how can W. Burton recover, who had the same power over the goods, and who equally agreed to put the assets in Tunnell's hands, where they were wasted?

4. The remaining question applies only to the case of Elizabeth Burton.

There is no suit against her for any devastavit of her own; she is sued simply as the surety of George Tunnell, which she is not.— (*Hopk. Ch. Rep.* 309, 330.)

*The Court* directed the following entry to be made on the record. On the eleventh and twelfth days of June, one thousand eight hundred and forty-nine, this cause came on to be heard before the Court of Errors and Appeals, on the transcript of the record of the Superior Court in and for Sussex county, and on the questions of law reserved for hearing before this court; and was argued by counsel. And now, to wit, this nineteenth day of June, in the year aforesaid, after due consideration, it is the opinion of the court, upon the first, second, third and fourth questions, that where an executor or administrator is removed from office, or where he dies before closing all the concerns of the estate of the testator or intestate, the co-executor or co-administrator, if there be such, or if there be none such, the succeeding executor or administrator, is entitled to receive, not only the goods, chattels, rights and credits which remain *in specie*, and money *kept separate*, which are, therefore, termed *unadministered;* but also all money and other assets, and all securities, books and papers, belonging to the estate of the testator or intestate, remaining in the hands of the removed or deceased executor or administrator; or with which at the time of his removal or decease, he is chargeable; all just allowances being made.    And in case the same be not surrendered and delivered within a reasonable time, to such co-executor or co-administrator, or succeeding executor or administrator, it constitutes a breach of the last part of the condition of the testamentary or administration bond, for which he may maintain an action, in the name of the State, for his use, upon such bond, against the removed executor or administrator, or the personal representatives of the deceased executor or administrator, and

the sureties of such removed or deceased executor or administrator; and recover such damages as may be assessed on occasion of the breaches assigned.

And it is further the opinion of the court, that the evidence in this cause does not show, that merely a residue, such as is mentioned in the first reserved question, remained in the hands of the said George Tunnell, at the time of his removal from office, as administrator of Miers Burton, deceased; but on the contrary, that there was a large balance of assets in his hands belonging to the estate of the said intestate, to be applied in the due course of administration; and for which the said George Tunnell, and the sureties in the administration bond executed by him and Elizabeth Burton, now deceased, are answerable.

On the fifth question, it is the opinion of the court, that where administrators have each executed a separate bond, and one of whom is removed from office, or dies before closing all the concerns of the estate of the intestate, the co-administrator may maintain an action in the name of the State, for his use, against the sureties of the removed or deceased administrator, on the separate bond executed by such removed or deceased administrator and his sureties; and in such action may recover whatever balance was in his hands at the time of his removal or death, belonging to the estate, with which he has charged himself, or with which he was legally and justly chargeable, in his separate administration account; whether the goods, chattels, or other assets with which he has charged himself in such separate administration account, were solely in his own possession or under his own control, or were originally according to the presumption of law, in the joint possession, or under the joint control of both administrators.

On the sixth question, it is the opinion of the court, that the evidence in this cause does not show, beyond what the law presumes, that the goods, chattels, rights and credits, proved to be remaining in the hands of George Tunnell, as administrator of Miers Burton, deceased, at the time of the removal from office of the said George Tunnell, were immediately after the death of the said Miers Burton, in the joint possession or under the joint control of all the administrators, to wit: Woolsey Burton, George Tunnell, and Elizabeth Burton, now deceased.

On the seventh question, it is the opinion of the court, that on the demurrers to the fourth and fifth pleas of the defendants, the

plaintiff is entitled to judgment in each of the cases; except the case of the State *vs.* John B. Waples, administrator, c. t. a of Elizabeth Burton, deceased, in which cases the court is of opinion that the defendant is entitled to judgment.

And it is ordered by the court, that this cause be remanded, and the opinion of this court be certified to the Superior Court in and for the county of Sussex; and that the defendants pay the costs of the proceedings in this court; except in the case of the State *vs.* Elizabeth Burton's administrator.

*Layton* and *Bates*, for plaintiffs.

*Cullen, Bayard* and *Houston*, for defendants.